UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PETER SIMON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. NO._____ |
| vs. | § | |
| | § | JURY DEMAND |
| PRINCESS CRUISE LINES, LTD. | § | |
| | § | |
| Defendant. | § | |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

PLAINTIFF, PETER SIMON hereinafter referred to as Plaintiff, complaining of PRINCESS CRUISE LINES, LTD. hereinafter referred to as Defendant and would respectfully show as follows:

**I.**
**Nature of Case**

1. This is a seaman's personal injury action brought pursuant to the Jones Act (46 U.S.C. § 30104) and the general maritime law of the United States.

**II.**
**Jurisdiction and Venue**

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

3. This Court has personal jurisdiction over Defendant as it does a substantial amount of business within the District by operating cruise ships from the Port of Galveston and the Bayport Cruise Terminal in Pasadena.

4. Venue is proper as the cruise ship upon which the subject personal injury occurred aboard operated weekly cruises from Galveston, Texas. Moreover, 45 U.S.C. § 56, as adopted by the

1

Jones Act, allows an injured seamen to bring suit against Defendant in any district where it does business at the time of commencing such action.

## III.
## Parties

5. At all material times, Plaintiff was a seaman working in the capacity of waiter aboard the cruise ship *CROWN PRINCESS*.

6. At all material times, Defendant is a cruise line who employed Plaintiff at the time of his personal injury and owns or operates the *CROWN PRINCESS*.

## IV.
## Facts

7. On the night of February 1, 2013, Plaintiff was preparing for the guest dinner service when he injured his lumbar spine while bending to arrange coffee cups then lifting the tray of cups without being provided a proper back support or suitable assistance by Defendant. The incident was reported and cursory medical care was provided.

8. As the injury occurred near the completion of Plaintiff's contract, Defendant only provided superficial care to the end of the contract, signed him off on vacation and repatriated him to Hungary where he was required to seek his own continued medical care.

9. In Hungary, Plaintiff's back pain became worse. Without coordination from Defendant, Plaintiff sought his own continued medical care. After Plaintiff retained the law firm of Brais & Associates, P.A. to demand Defendant to provide Plaintiff's maintenance and cure benefits. It was not until Brais & Associates, P.A.'s demand to provide Plaintiff maintenance and cure benefits, did Defendant start providing those benefits to Plaintiff.

10. An initial MRI of the lumbar spine reveals a L5 disk herniation with nerve root compression as well as spondylosis at the L4/5 level. The herniation caused Plaintiff to suffer

<mark>2</mark>

excruciating lower back pain. The nerve root impingement caused uncomfortable shooting pain down Plaintiff's leg. Such constitutes a significant work related injury. A medical record dated May 2, 2013 states, "If the currently ongoing conservative treatment process ineffective, surgery, i.e., herniotomy may be considered". Plaintiff continued his conservative treatment constituting physical therapy and home exercise. Though conservative treatment did provide some relief, medical records reveal Plaintiff is still having difficulty with strenuous activities. He also still has issues with pain radiating down to his leg.

11. Though Plaintiff's medical condition has plateaued, his doctors agree he must change his lifestyle to avoid straining his spine due to the disk herniation, nerve root compression and spondylosis. A medical record from Plaintiff's doctor dated August 14, 2013 reads, "he still cannot bear physical burden, and he is also unable to lift weighty objects or haul heavy loads. He may resume his previously working activities, but he is allowed to carry out only 'lightened' work, which is forbearing for his ship." As such, he can no longer work as a waiter either aboard a cruise ship or on land. In short, this incident put an end to his waitering career. This incident also put an end to many activities Plaintiff normally enjoyed.

## V.
## Claim for Jones Act Negligence

12. As an employer, it was Defendant's duty under the Jones Act to provide Plaintiff with a safe place to work.

13. Defendant breached its duty either itself, or through an agent, by:

   a. Requiring Plaintiff to lift heavy trays without suitable safety equipment such as back braces;

   b. Requiring Plaintiff to lift heavy trays without suitable assistance from additional crew members;

3

c. Requiring Plaintiff to left heavy trays and other objects on near constant basis without suitable breaks.

d. Failing to properly train Plaintiff to safely lift heavy objection under his actual job conditions;

e. Failing to have an appropriate complement of crew available to assist Plaintiff in performing his job responsibilities so that he would not be overly physically taxed.

f. Failing to promulgate and enforce reasonable rules and regulations to insure the safety and health of the Plaintiff while engaged in the course of Plaintiff's employment with Defendant;

g. Failing to use reasonable care to provide Plaintiff a safe place to work by requiring Plaintiff to work in an area which contained unreasonable hazards;

h. Failing to provide adequate instruction to Plaintiff's fellow crewmembers concerning the need to properly secure deckchair when the ship is approaching heavy weather;

i. Failing to provide prompt, proper and adequate medical care to the Plaintiff, which aggravated Plaintiff's injuries and caused Plaintiff additional pain and disability;

j. Failing to properly manage Plaintiff's medical care and treatment after Plaintiff was injured.

14. As a result of the negligent acts of Defendant stated in paragraph 13 above, Plaintiff was injured about the body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life,

physical disability, impairment, inconvenience of the normal pursuits and pleasures of life, feelings of economic insecurity caused by the disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of the injuries, suffered physical handicap, lost past and future wages as well as impaired/diminished working ability and earning capacity. The injuries and damages are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff in the past and in the future has/will lost/loose the fringe benefits that come with Plaintiff's job, including but not limited to free food, free shelter, free medical care, free uniforms, vacation and free airfare home.

## VI.
## Claim for Failure to Provide Maintenance and Cure

15. Under the General Maritime Law of the United States, Defendant, as Plaintiff's employer as well as owner or operation or the *CROWN PRINCESS*, is obligated to provide Plaintiff with maintenance and cure from the point of his injury/illness manifests until he is declared by a qualified physician as having reached maximum medical cure.

16. Defendant breached its obligation as it delayed, failed and/or refused to pay Plaintiff's entire maintenance and cure benefits. Specifically, Defendant discharged Plaintiff while in need of additional medical care but failed to provide care or maintenance benefits. Further, Plaintiff either individually and/or through his attorney demanded Defendant provide him with needed and recommended medical care as well as to give him his due maintenance benefits.

17. The delay, failure and/or refusal to pay maintenance and cure aggravated Plaintiff's condition and/or caused Plaintiff to suffer additional injuries and damages including, but not limited to, aggravation of Plaintiff's physical condition, disability, pain and suffering, reasonable fear of developing future physical and medical problems, mental anguish, loss of enjoyment of

life, feelings of economic insecurity as well as lost earning or earning capacity, and medical and hospital expenses in the past and future.

18. Defendant's delay, failure and/or refusal to pay Plaintiff's entire maintenance and cure was without a reasonable defense.

19. Defendant's delay, failure and/or refusal to pay Plaintiff's entire maintenance and cure was willful, arbitrary, capricious, and in callous disregard to Plaintiff's plight.  As such, Plaintiff has become obligated to retain the undersigned law firm to pursue his rights against Defendant.

**VII.**
**Claim for Failure to Provide Prompt, Proper and Adequate Medical Care**

20.  As an employer, it was Defendant's duty under the Jones Act to provide an employee seaman, including Plaintiff, with prompt, proper and adequate medical care.

21. Defendant breached its duty to provide Plaintiff with prompt, proper and adequate medical care by:

   a. Failing to provide Plaintiff with shipboard doctors competent to diagnose and treat Plaintiff's injuries;

   b. Selecting/hiring doctor who failed to properly diagnose Plaintiff's injury; and/or,

   c. Failing to provide Plaintiff with shoreside doctors competent to diagnose and/or treat Plaintiff's injuries;

   d. Electing to return Plaintiff home without arranging for and/or providing him with recommended follow up care and maintenance benefits; and/or,

   e. Failing to pay for Plaintiff's entire maintenance and cure benefits when demanded to do so by Plaintiff.

22. As a direct and proximate result of Defendant's breach of duty, Plaintiff's condition was aggravated, Plaintiff's recovery was prolonged and/or Plaintiff suffered additional injuries.  This

6

resulted in damages including, but not limited to, disability, pain and suffering, reasonable fear of developing future physical and medical problems, mental anguish, loss of enjoyment of life, feelings of economic insecurity, lost earning or earning capacity as well as medical and hospital expenses in the past and future.

## VIII.
## Claim for Unseaworthiness

23. As the owner/operator of the *CROWN PRINCESS*, Defendant had the duty to provide seaman serving aboard the vessel, including Plaintiff, with a vessel reasonably fit for its intended purpose.

24. Defendant breached its duty as the *CROWN PRINCESS* was unseaworthy and therefore unreasonably fit for its intended purposes, in the following respects:

   a. Requiring Plaintiff to lift heavy trays without suitable safety equipment such as back braces;

   b. Requiring Plaintiff to lift heavy trays without suitable assistance from additional crew members;

   c. Requiring Plaintiff to left heavy trays and other objects on near constant basis without suitable breaks.

   d. Failing to properly train Plaintiff to safely lift heavy objection under his actual job conditions;

   e. Failing to have an appropriate complement of crew available to assist Plaintiff in performing his job responsibilities so that he would not be overly physically taxed.

f.  Failing to promulgate and enforce reasonable rules and regulations to insure the safety and health of the Plaintiff while engaged in the course of Plaintiff's employment with Defendant;

g.  Failing to use reasonable care to provide Plaintiff a safe place to work by requiring Plaintiff to work in an area which contained unreasonable hazards;

h.  Failing to provide adequate instruction to Plaintiff's fellow crewmembers concerning the need to properly secure deckchair when the ship is approaching heavy weather;

25. As a direct and proximate cause the alleged unseaworthy condition(s), Plaintiff was injured about the body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience of the normal pursuits and pleasures of life, feelings of economic insecurity caused by the disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of the injuries, suffered physical handicap, lost past and future wages as well as impaired/diminished working ability and earning capacity.  The injuries and damages are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future.  In addition, Plaintiff in the past and in the future has/will lost/loose the fringe benefits that come with Plaintiff's job, including but not limited to free food, free shelter, free medical care, free uniforms, vacation and free airfare home.

## Jury Demand

Plaintiff demands trial by jury on all issues so triable.

## Prayer

Plaintiff prays that this citation issue and be served upon Defendant requiring that the Defendant appear and answer, and that upon final hearing, Plaintiff has judgment against Defendant for their actual damages in such amounts as the evidence may show and the jury may determine to be proper, together with pre-judgment interest, post-judgment interest, costs of suit, attorney's fee for the willful, arbitrary and/or capricious denial of paying maintenance and cruise benefits, punitive damages for the willful, arbitrary and/or capricious denial of paying maintenance and cruise benefits and such other and further relief to which Plaintiff may show himself to be justly entitled.

Respectfully Submitted,

BRAIS & ASSOCIATES, P.A.

*/s/ RICHARD D. RUSAK*
RICHARD D. RUSAK
Fla. State Bar No. 0614181
S.D. Tex. No.
100 N. Biscayne Blvd., Ste. 800
Miami, Florida 33132
RRusak@braislaw.com
Telephone: (305) 416-2901
Facsimile: (305) 416-2902
Attorney-in-Charge for Plaintiff
