Case 3:13-cv-00444   Document 23   Filed in TXSD on 05/19/14   Page 1 of 15

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PETER SIMON, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. G-13-0444 |
| § | | |
| PRINCESS CRUISE LINES, LTD., § | | |
|     Defendant. § | | |

## **MEMORANDUM AND ORDER**

This case is before the Court on the "Motion to Compel Arbitration and To Dismiss Plaintiff's Complaint or Stay This Action" ("Motion to Compel Arbitration") [Doc. # 6] filed by Defendant Princess Cruise Lines, Ltd. ("Princess"), to which Plaintiff Peter Simon filed a Response [Doc. # 10], and Princess filed a Reply [Doc. # 11]. Having reviewed the full record and applicable legal authorities, the Court **grants** the Motion to Compel Arbitration.

## **I.     BACKGROUND**

Plaintiff, a citizen of Hungary, was employed by Princess as a waiter on its cruise ship Crown Princess. Plaintiff alleges that he injured his back on February 1, 2013, when he lifted a tray of coffee cups.

In connection with his employment and prior to his injury, Plaintiff and Princess entered into an Employment Contract ("Contract") in Budapest, Hungary.

P:\ORDERS\11-2013\G444MCompelArb.wpd   140519.1241

The signature page of the Contract provides in large, capital letters that it is "AN IMPORTANT LEGAL AGREEMENT" and instructs the signing employee to "READ IT CAREFULLY BEFORE SIGNING." *See* Contract, Exh. B to Motion to Compel Arbitration. The first paragraph of the signature page of the Contract includes the signing employee's acknowledgment that his employment "constitutes an international commercial relationship with one or more foreign parties and that any and all disputes of any kind or nature whatsoever between Employee and Company shall be resolved by binding arbitration in Bermuda as set forth in Article 15" of the attached Contract. *See id.* In the second paragraph of the signature page of the Contract, the employee states that he "is not signing under duress of any kind" and affirms that he agrees to abide by the "Arbitration provisions" in the Contract. *See id.*

Article 15 of the Contract ("Arbitration Agreement"), entitled in large letters "Arbitration, Venue and Resolution of All Claims, Controversies or Disputes," begins with a bolded paragraph in all capital letters:

> IMPORTANT – THIS ARTICLE LIMITS EMPLOYEES AND COMPANY'S RIGHT TO PURSUE LITIGATION IN COURT AGAINST EACH OTHER AND AFFECTS IMPORTANT LEGAL RIGHTS. READ IT CAREFULLY. BY ACCEPTING EMPLOYMENT WITH COMPANY, EMPLOYEE UNDERSTANDS, AGREES TO AND ACCEPTS THE OBLIGATION TO ARBITRATE ANY DISPUTE AS FURTHER SET FORTH IN THIS ARTICLE 15. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT THEY MAY HAVE TO A JURY TRIAL, AND

> WAIVE ANY RIGHT TO HAVE A COURT DETERMINE THE ENFORCEABILITY OF THIS AGREEMENT TO ARBITRATE.

Contract, Art. 15.  The Arbitration Agreement provides that the parties "intend that every conceivable dispute between them be resolved by binding arbitration." *Id.*  The arbitration is to take place in Bermuda "pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards" (the "Convention"). *Id.*

Plaintiff filed this lawsuit asserting a claim for Jones Act negligence, and general maritime claims for failure to provide maintenance and cure, failure to provide prompt, proper and adequate medical care, and a claim for unseaworthiness, all related to his injury while employed as a waiter on the cruise ship.  Defendant filed its Motion to Compel Arbitration, which has been fully briefed and is now ripe for decision.

## II.  ANALYSIS

### A.  The Convention

The Convention requires a district court to order arbitration if an international arbitration clause falls within the Convention's coverage.  *See* 9 U.S.C. § 201; *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 903 (5th Cir. 2005); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004); *Francisco v. Stolt Achievement MT*, 293 F.3d 279, 273 (5th Cir. 2002); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1145 (5th Cir. 1985).

Indeed, the Convention "contemplates a very limited inquiry by courts when considering a motion to compel arbitration." *Francisco*, 293 F.3d at 273; *see also Freudensprung*, 379 F.3d at 339. The Supreme Court has recognized generally "the strong federal policy in favor of enforcing arbitration agreements," *Francisco*, 293 F.3d at 275 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)), and that this federal policy favoring arbitration "applies with special force in the field of international commerce," *id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). More specifically, the Supreme Court has recognized that:

> [t]he goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Id.* (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n.15 (1974)); *see also Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1262 (11th Cir. 2011).

Under the Convention, the district court is ***required*** to compel arbitration if "(1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *Lim*, 404 F.3d at 903; *Freudensprung*, 379 F.3d at 339;

*Francisco*, 293 F.3d at 273; *Sedco*, 767 F.2d at 1144-45. The Convention specifically authorizes a court to order the parties to arbitrate their dispute even when the arbitration is to occur outside the United States. *See* 9 U.S.C. § 206; *Sedco*, 767 F.2d at 1146.

The parties agree, and the record establishes, that the Contract between Plaintiff and Defendant contains a written Arbitration Agreement requiring arbitration of Plaintiff's claims against Defendant. The parties agree also that the Contract provides for arbitration in Bermuda, a Convention signatory, and that Plaintiff is not a United States citizen. Plaintiff does not concede that the Arbitration Agreement "arises out of a commercial legal relationship" but courts, including the Fifth Circuit, have held that a seaman employment contract arises out of a commercial legal relationship to which the Convention applies. *See Francisco*, 293 F.3d at 274; *see also Bautista v. Star Cruises*, 396 F.3d 1289, 1300 (11th Cir. 2005). Unlike the Federal Arbitration Act ("FAA"), the Convention does not specifically exclude "contracts of employment of seamen" from its coverage.[1]

---

[1] The FAA specifically excludes "contracts of employment of seamen" from its coverage. *See* 9 U.S.C. § 1; *Francisco*, 293 F.3d at 273-74. The Convention does not, however, exclude seamen employment contracts and the FAA's exclusion does not apply to the Convention. *See Francisco*, 293 F.3d at 274 (holding that "the Convention, the ratifying language, and the Convention Act implementing the Convention do not recognize an exception for seamen employment contracts"). As a result, it is only necessary that the arbitration agreement arise out of a "commercial (continued...)

B.   **Exceptions to Enforcement of Arbitration Agreement**

The four factors required for the Convention are satisfied in this case and, as a result, the Court is required to compel arbitration *unless* the Arbitration Agreement is "null and void, inoperative or incapable of being performed." *See* Convention, Art. II(3); *Freudensprung*, 379 F.3d at 339. Courts are required to "rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, ___ U.S. ___, 133 S. Ct. 2304, 2309 (2013). "[I]ndividuals seeking to avoid the enforcement of an arbitration agreement face a high bar, even when the claims at issue are statutory." *Lim*, 404 F.3d at 907 (internal quotations and citation omitted).

Plaintiff argues that the Arbitration Agreement in this case is null and void because it is against public policy to require him to arbitrate his Jones Act claim, particularly when the arbitration is to occur in Bermuda. "'[T]he Convention's 'null and void' clause . . . limits the bases upon which an international arbitration agreement may be challenged to standard breach-of-contract defenses.'" *Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005) (quoting *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79 (1st Cir. 2000)). "The limited scope of the Convention's null and void clause 'must be interpreted to encompass only those situations – such as fraud, mistake, duress, and waiver – that can be applied neutrally on an

---

1   (...continued)
    legal relationship." *Id.*

international scale.'" *Id.* (quoting *DiMercurio*, 202 F.3d at 80); *see also Lindo*, 652 F.3d at 1276 (holding that Article II, applicable at the arbitration-enforcement stage, recognizes only the affirmative defenses "that the said agreement is null and void, inoperative or incapable of being performed").

Plaintiff does not assert or present any evidence of fraud, mistake, duress, or waiver. Instead, Plaintiff argues that the Arbitration Agreement violates public policy. "To implement the Convention, Chapter 2 of the FAA provides two causes of action in federal court for a party seeking to enforce arbitration agreements covered by the Convention: (1) an action to compel arbitration in accord with the terms of the agreement, 9 U.S.C. § 206, and (2) at a later stage, an action to confirm an arbitral award made pursuant to an arbitration agreement, 9 U.S.C. § 207." *See Lindo*, 652 F.3d at 1262-63. The Convention contains separate defenses that correspond to each of these two stages of enforcement. Article II contains the "null and void" defense that applies at the initial stage to actions to compel arbitration. *See id.* at 1263 (citing *Bautista*, 396 F.3d at 1301). Article V of the Convention applies at the award-enforcement stage and lists seven defenses that courts are to consider when deciding whether to recognize and enforce an arbitral award. *See Lindo*, 652 F.3d at 1263. One of Article V's seven defenses – applicable at the award-enforcement stage and not listed in Article II – is the "public policy" defense, which allows a court to refuse

recognition and enforcement of an arbitral award if "recognition or enforcement of the award would be contrary to the public policy" of the country in which recognition and enforcement are sought. *See* Convention, art. V(2). Therefore, the Convention itself allows a public policy defense *after* arbitration and authorizes the court to refuse to enforce "an arbitral award" if it is contrary to public policy. *See id.*

Plaintiff relies on the Supreme Court's decision in *American Express* to permit him to assert public policy defenses to enforcement of the Arbitration Agreement. The *American Express* case, however, was decided under the Federal Arbitration Act ("FAA"), which provides that arbitration agreements are valid and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. There was no international aspect to the *American Express* case. Because of the "unique circumstances of foreign arbitration," defenses applicable under the FAA are transferrable to a Convention case "only if they fit within the limited scope of defenses" set forth in the Convention. *Bautista*, 396 F.3d at 1302; *see also Francisco*, 293 F.3d at 275 (rejecting argument that the Convention and the FAA should be applied uniformly). As a result, the Court concludes that Plaintiff may not assert public policy defenses to the Arbitration Agreement covered by the Convention at this stage and must, instead, wait to assert those arguments when

challenging the arbitrator's decision following arbitration. Nonetheless, for purposes of a full record, the Court will address Plaintiff's public policy defenses.

### C. Public Policy Argument

Plaintiff argues that the Arbitration Agreement violates public policy by depriving him of his right to pursue a Jones Act claim, to recover the full quantum of Jones Act damages, and to pursue his claim in the forum of his choice. Plaintiff has failed to satisfy his burden to demonstrate that enforcement of the arbitration agreement would violate public policy.

***Jones Act Claim and Damages.*** – Plaintiff has failed to show that requiring arbitration of this dispute will necessarily prevent him from pursuing a Jones Act claim and recovering Jones Act damages. There is nothing in the Arbitration Agreement that prevents the arbitrator from considering a Jones Act claim if appropriate. *See, e.g., Prokopeva v. Carnival Corp.*, 2008 WL 4276975, *6 n.15 (S.D. Tex. Sept. 10, 2008). The Supreme Court in *Italian Colors* was clear that "so long as the prospective litigant effectively may vindicate [his] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Italian Colors*, 133 S. Ct. at 2310 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)). Absent a provision in the Arbitration Agreement that precludes consideration of Jones Act claims, it is

premature at this stage to predict whether the arbitrator will decide choice-of-law issues in favor of or against allowing Plaintiff's Jones Act and other maritime claims. *See Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540-41 (1995) (holding that "the First Circuit was correct to reserve judgment on the choice-of-law question . . . as it must be decided in the first instance by the arbitrator"). The Supreme Court in *Vimar* noted that the only motion before the district court was to enforce the arbitration agreement and that the district court would have "the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the . . . laws has been addressed." *Id.* at 540.

***Right to Litigate in Chosen Forum*.**– Plaintiff argues also that the Arbitration Agreement, requiring arbitration in Bermuda, violates public policy by denying him the right to bring his Jones Act claim in his choice of any eligible forum. *See* Response, pp. 9-12. The Jones Act incorporates United States laws that relate to personal injury to or death of a railway employee. *See* 46 U.S.C. § 30104. The Supreme Court has interpreted this to mean that the Jones Act adopts the liability provisions of the Federal Employers' Liability Act ("FELA"). *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 456 (1994). The FELA contains a venue provision allowing lawsuits to be filed in the plaintiff's choice of any state or federal court "in the district of the residence of the defendant, or in which the cause of action arose, or in which

the defendant shall be doing business at the time of commencing such action." 45 U.S.C. § 56 ("§ 6").  Plaintiff argues that the Arbitration Agreement, requiring arbitration in Bermuda, violates his right under § 6 to select the forum of his choice.

Plaintiff relies primarily on *Boyd v. Grand Trunk Western R.R. Co.*, 338 U.S. 263 (1949).[2]  *Boyd* involved an injured railroad worker's agreement requiring any lawsuit to be filed in "the county or district where I resided at the time my injuries were sustained and not elsewhere."  *See Boyd*, 338 U.S. at 264.  The Fifth Circuit, however, has declined to apply *Boyd* in the arbitration agreement context.  *See Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 281-84 (5th Cir. 2007).  In *Terrebonne*, the Fifth Circuit held in part that, because the Jones Act had its own venue provision, § 6 did not apply.  *Id.* at 281.  In 2008, after the Fifth Circuit's decision in *Terrebonne*, the venue provision of the Jones Act was deleted.  The 2008 amendment, however, "did not signal its intention to 'identify any category of claims as to which agreements to arbitrate will be held unenforceable.'"  *Lindo*, 652 F.3d at 1287 (quoting *Mitsubishi*, 473 U.S. at 627).  "The repeal of the Jones Act's venue

---

[2] Plaintiff relies also on *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009).  Later decisions from the Eleventh Circuit have rejected the *Thomas* decision as contrary to prior circuit authority.  *See Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257, 1278 (11th Cir. 2011); *Fernandes v. Carnival Corp.*, 484 F. App'x 361, 362 (11th Cir. July 12, 2012).  This Court declines to follow the *Thomas* reasoning.

provision hardly warrants the inference that Congress sought to overturn the numerous cases requiring arbitration of Jones Act claims where the Convention applies." *Id*.

Additionally, the Fifth Circuit in *Terrebonne* refused to apply *Boyd* in the arbitration context because it did not involve an arbitration agreement. *Terrebonne*, 477 F.3d at 283. The Fifth Circuit noted that the Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), upheld an arbitration agreement governed by the FAA, "specifically distinguishing prior cases on the ground, inter alia, that those cases were not decided under the FAA, which, as discussed above, reflects a liberal federal policy favoring arbitration agreements." *Terrebonne*, 477 F.3d at 283 (internal quotations and citation omitted).

Like the Fifth Circuit, the Second Circuit has refused to apply *Boyd* in the arbitration context. *See Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 121 (2d Cir. 2010) (and cases cited therein). The *Harrington* court noted that the "purpose of § 6 is to ensure the existence of a practical and convenient forum to adjudicate the employee's rights, not to ensure the existence of a particular type of forum. Similarly, the 'substantial right' referred to in *Boyd* was not the worker's right to bring litigation in a judicial forum, but his right to have his claims adjudicated in an 'eligible forum.'" *Id.* at 122 (quoting *Boyd* 338 U.S. at 265). As noted by the Second Circuit, an arbitral forum is not only an "eligible forum," under the FAA and the Convention, it is a

"favored one." *Id.* An arbitration agreement does not deprive the plaintiff of "his right to adjudicate his claims, it only shifts his right to adjudication to an arbitral forum." *Id.* The Convention permits, indeed requires, the Court to enforce a plaintiff's agreement to arbitrate, even where the arbitration is to occur in the forum where the plaintiff agreed to arbitrate rather than in the location where the plaintiff filed his lawsuit. *See, e.g., Lindo*, 652 F.3d at 1260; *Prokopeva v. Carnival Corp.*, 2008 WL 4276975 (S.D. Tex. Sept. 10, 2008) (requiring Russian citizen, who filed lawsuit in Texas, to arbitrate claims in London, England, Monaco, Panama City, Panama, or Manila, Phillippines).

The Second Circuit in *Harrington* noted also that § 6 of the FELA, on which *Boyd* is based, makes no reference to arbitration agreements and was enacted at a time when "arbitration was not a commonly used mechanism." *Harrington*, 602 F.3d at 121. Consequently, § 6 "cannot reasonably be read to include a blanket prohibition on seamen arbitration agreements when, at the time of enactment, that provision did not contemplate, either in letter or spirit, the existence of an arbitral forum." *Id.* at 121-22.

This Court agrees with the reasoning in *Terrebonne* and *Harrington*, and rejects Plaintiff's public policy arguments that arbitration is unwarranted.

**D.     Conclusion**

All four factors needed to compel arbitration pursuant to the Convention are satisfied in this case, and Plaintiff has not demonstrated that the Arbitration Agreement is "null and void, inoperative or incapable of being performed." Even if Plaintiff may assert public policy arguments at this initial arbitration-enforcement stage, he has failed to demonstrate that the parties' Arbitration Agreement should not be enforced on public policy grounds. As a result, the Court is required to order arbitration.

### III.  CONCLUSION AND ORDER

The parties' Contract requires arbitration of this dispute in Bermuda. The Arbitration Agreement is enforceable under the Convention and, as a result, it is hereby

**ORDERED** that Defendant's Motion to Compel Arbitration [Doc. # 6] is **GRANTED** and the parties are required to arbitrate this dispute in accordance with their Arbitration Agreement. It is further

**ORDERED** that this case is **STAYED AND ADMINISTRATIVELY CLOSED** in favor of arbitration as required by the parties' Contract and the Convention. It is further

**ORDERED** that the parties shall file a written status report on **November 19, 2014**, and every six months thereafter until the arbitration is completed.

SIGNED at Houston, Texas, this **19th** day of **May, 2014**.

*[signature]*

Nancy F. Atlas
United States District Judge